**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1939
_____

LUIS ALONZO CUELLAR MANZANO,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A088-016-885)
Immigration Judge:  Honorable Daniel A. Morris

Submitted under Third Circuit L.A.R. 34.1(a)
January 23, 2019

Before:  CHAGARES, BIBAS, *Circuit Judges*, and SÁNCHEZ, *Chief District Judge*[*]

(Filed: March 22, 2019)

_____

OPINION[+]
_____

---

[*] The Honorable Juan R. Sánchez, Chief District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[+] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SÁNCHEZ, *District Judge*.

Luis Alonzo Cuellar Manzano petitions for review of an order of the Board of Immigration Appeals (the "Board") affirming an immigration judge's denial of his application for withholding of removal pursuant to the Immigration and Naturalization Act ("INA") and relief pursuant to the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition in part, and dismiss it in part.

I.

As we write mainly for the parties, we only briefly recite the facts. On or about October 17, 2006, Cuellar Manzano, a native and citizen of El Salvador, entered the United States without proper documentation, seeking protection from gang violence and attempted recruitment. He was apprehended by the Department of Homeland Security shortly thereafter. On November 9, 2006, an immigration judge (IJ) ordered Cuellar Manzano removed pursuant to Cuellar Manzano's "Stipulated Request for Order and Waiver of Hearing." The Immigration and Naturalization Service deported Cuellar Manzano on December 12, 2006.

On or about January 12, 2007, Cuellar Manzano reentered the United States. More than ten years later, on May 1, 2017, he was arrested by Immigration and Customs Enforcement in Long Branch, New Jersey. The same day, his 2006 order of removal was reinstated. On July 17, 2017, Cuellar Manzano was referred to an IJ for further proceedings after he credibly expressed a reasonable fear of persecution or torture to an asylum officer.

2

After a hearing at which Cuellar Manzano testified and was represented by counsel, the IJ denied Cuellar Manzano's request for withholding of removal and application for relief under CAT. As to his withholding claim, the IJ found Cuellar Manzano failed to establish past or likely future persecution on account of his membership in a particular social group. Addressing future persecution, the IJ found Cuellar Manzano was not entitled to relief because his proposed social group— "individuals in El Salvador targeted by gangs as a result of conflict with the gangs in their rule"—lacked social distinction. App. 16. The IJ also rejected Cuellar Manzano's claim for withholding based on likely future political persecution. The IJ found there was insufficient evidence "the gangs viewed [Cuellar Manzano's] resistance to gang recruitment as an expression of political opinion." App. 17. Finally, the IJ rejected Cuellar Manzano's claim for CAT relief, noting he failed to establish by a preponderance of the evidence the government of El Salvador would torture him, or acquiesce in his torture by gangs, upon his return.

Cuellar Manzano then appealed the IJ's decision to the Board, which affirmed the IJ's decision in its entirety. With respect to his application for withholding on the basis of his membership in a particular social group, the Board concurred with the IJ's determination that Cuellar Manzano's claimed social group lacked social distinction, and also found the group definition was not based on an "immutable characteristic" or defined with adequate "particularity." App. 6. It also affirmed the IJ's decision with respect to Cuellar Manzano's claim for withholding on account of his political beliefs, noting Cuellar Manzano failed to establish the gangs were aware of his political

3

opposition to their existence. As to Cuellar Manzano's bid for CAT relief, the Board found he did not demonstrate the government of El Salvador would acquiesce in his torture if he were to return to the country. Finally, the Board rejected a constitutional challenge by Cuellar Manzano to the fairness of his hearing before the IJ, noting he had failed to establish a constitutional error or prejudice resulting from such an error. Cuellar Manzano then petitioned for review of the Board's decision by this Court.

## II.

Subject to the exception discussed below, we possess jurisdiction to hear this petition for review of a final order of removal pursuant to 8 U.S.C. § 1252(a)(1).[1] We review the Board's decision as the final agency decision; however, to the extent it adopts the IJ's reasoning, the IJ's decision is treated as the final agency decision. *Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011). We must apply the "substantial evidence" standard, which requires us to affirm findings of fact "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Zheng v. Gonzales*, 417 F.3d 379, 381 (3d Cir. 2005). The Board's interpretation of the

---

[1] The Attorney General argues we lack subject matter jurisdiction to hear Cuellar Manzano's claim for withholding of removal based on his membership in a particular social group because he presented a new definition of the particular social group at issue on appeal. The INA requires administrative exhaustion. 8 U.S.C. § 1252(d); *see also Castro v. Att'y Gen.*, 671 F.3d 356, 365 (3d Cir. 2012) ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue."). Nevertheless, we assume, without deciding, Cuellar Manzano's claim is exhausted because even if we were to reject the Attorney General's argument, we would affirm the Board's decision. *See Jordon v. Att'y Gen.*, 424 F.3d 320, 325 n.8 (3d Cir. 2005) (noting the question of exhaustion under 8 U.S.C. § 1252(d), although jurisdictional, is statutory in nature, and thus need not always be resolved).

4

INA is given deference, but our review of the Board's legal conclusions is de novo. *Kamara v. Att'y Gen.*, 420 F.3d 202, 211 (3d Cir. 2005).

Cuellar Manzano argues the Board erred in finding he failed to qualify for withholding of removal or relief pursuant to CAT. He also claims the IJ and Board proceedings violated his constitutional right to due process. Because we find the Board's factual conclusions to be supported by substantial evidence, and concur with its application of the law to those facts after a de novo review, we will deny Cuellar Manzano's petition.

First, we consider Cuellar Manzano's claim of error as it pertains to his application for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), which prohibits removal if the petitioner's "life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." A petitioner for withholding of removal "bears the burden of proving that he will more likely than not face persecution on account of one of those protected grounds." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 (3d Cir. 2015).

If a petitioner establishes *past* persecution on a protected basis, the petitioner is entitled to a rebuttable presumption he will be persecuted in the future. 8 C.F.R. § 1208.16(b)(1)(i). If the petitioner fails to establish past persecution, he may nevertheless be entitled to withholding of removal if he can establish "it is more likely than not" he would be persecuted in the future on a protected basis if returned. *Gonzalez-Posadas*, 781 F.3d at 687. Cuellar Manzano claims, if removed, he would be persecuted on the basis of his membership in a cognizable social group, the iterations of which can be fairly

5

summarized as "individuals in El Salvador who oppose gangs and gang membership." He also claims likely persecution on account of his political opposition to the gangs.

Persecution on the basis of membership in a "particular social group" requires a petitioner to establish his proposed social group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 540 (3d Cir. 2018) (quoting *Matter of M-E-V-G*, 26 I. & N. Dec. 227, 237 (BIA 2014)). "Particularity" requires showing the alleged social group has "'discrete and . . . definable boundaries' that are not 'amorphous, overbroad, diffuse, or subjective.'" *S.E.R.L.*, 894 F.3d at 552-53 (quoting *M-E-V-G*, 26 I. & N. Dec. at 239). "Social distinction," requires "evidence that the society in question recognizes a proposed group as distinct." *S.E.R.L.*, 894.3d at 551. As to the difference between particularity and social distinction

> the former is essentially an objective inquiry, asking whether a reasonable person could look at the proposed definition of a social group and determine who falls within it, whereas the latter poses a more subjective question, whether the alien's home society actually does recognize that group as being a "distinct" and identifiable group.

*Id.* at 553.

In Cuellar Manzano's case, the Board found that even if the gang violence he claimed to have suffered as a child qualified as persecution within the meaning of the INA, "the harm was not imposed on account of a protected ground" because he failed to establish the group in which he claimed membership "shares a common immutable characteristic, is defined with particularity, and is socially distinct within Salvadoran society." App. 6.

We find no basis to disturb the Board's decision. The Board correctly noted Cuellar Manzano's claimed social group—which, no matter how phrased, rests exclusively on his opposition to gangs and gang membership—fails as a matter of law. Even assuming opposition to gang recruitment is an "immutable" characteristic, "individuals opposed to gang membership," in isolation, is simply too general and amorphous a group to sustain a claim for withholding of removal. *See Lizama v. Holder*, 629 F.3d 440, 447 (4th Cir. 2011). Based on the absence of specificity from which the IJ, Board, or this Court, could have found "discrete and definable boundaries" of the proposed group, and the lack of evidence Salvadorans consider those opposed to gangs to be distinct from the rest of their society, we agree with the Board's conclusion. Cuellar Manzano failed to adequately establish membership in a cognizable social group. Accordingly, the Court will deny this aspect of his petition for review.

We will also deny Cuellar Manzano's petition as it pertains to his claim for withholding of removal based on future persecution for his professed anti-gang political beliefs. Both the IJ and the Board rejected this claim because there was insufficient evidence the gangs were aware of Cuellar Manzano's beliefs. More specifically, the IJ noted, "[o]ther than refusing to join the gang, [Cuellar Manzano] did not testify that he expressed to the gang[s] that he had anti-gang beliefs." App. 17-18. The Board affirmed on this basis, citing this Court's decision in *Valdiviezo-Galdamez v. Attorney General*, which held, in part, that an "internally held political opinion" cannot support a claim of persecution based on such an opinion. 663 F.3d 582, 609 (3d Cir. 2011). Rather, "[t]here must be evidence that the gang knew of [the petitioner's] political opinion and targeted

7

him because of it." *Id.* Having reviewed Cuellar Manzano's testimony, we find the factual conclusion Cuellar Manzano failed to communicate his political opposition to the gangs—as distinct from his desire to avoid joining their ranks—to be supported by the record. *See* App. 172 ("I opposed [the gangs] by the way of saying that I used to like to study. But they did not stop insisting [that I join the gang]."). Moreover, we discern no error in the Board's reliance on *Valdiviezo-Galdamez* for the cited proposition. Accordingly, we affirm the Board's decision on this issue.

Second, we find no basis to disturb the Board's determination as to Cuellar Manzano's failure to establish a basis for CAT relief. A petitioner for relief "on the merits under the Convention Against Torture bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Sevoian v. Ashcroft*, 290 F.3d 166, 174-75 (3d Cir. 2002) (quoting 8 C.F.R. § 208.16(c)(2)). A court must consider all relevant evidence, including circumstantial evidence, when assessing the possibility of future torture. *See* 8 C.F.R. § 208.16(c)(3). We have adopted a five-part test to determine whether an act is considered "torture" for removal purposes. In order to constitute torture, the act must be "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Auguste v. Ridge*, 395 F.3d 123, 135 (3d Cir. 2005) (quoting *Matter of J-E*, 23 I. & N. Dec. 291, 297 (BIA 2002)).

To establish the government's acquiescence, a petitioner "must demonstrate that, prior to the activity constituting torture, a public official was aware of it and thereafter breached the legal responsibility to intervene and prevent it." *Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017). The petitioner may satisfy the knowledge requirement by producing "sufficient evidence that the government [] is willfully blind" to the torturous conduct. *Id.* (alteration in original) (quoting *Silva-Rengifo*, 473 F.3d at 65).

Here, the IJ found Cuellar Manzano failed to qualify for CAT protection because he failed to establish it was more likely than not he would be tortured if he returned to El Salvador or the government would acquiesce to his torture. The Board affirmed each of these findings and determined the IJ's opinion was not clearly erroneous.

We find substantial evidence supports the Board's determination. Specifically, Cuellar Manzano has not reported a threat from the gangs in ten years, nor has he offered any evidence suggesting any member of the Salvadoran government ever sought, or is presently seeking, to torture him, or would consent to his torture.[2] Cuellar Manzano's CAT claim is further undercut by the Salvadoran government's recent anti-crime measures (despite their disputed effectiveness), the existence of which suggests the government would not acquiesce to his torture. As a result, we find the Board's decision to be supported by substantial evidence and will deny this aspect of Cuellar Manzano's petition.

---

[2] In fact, Cuellar Manzano testified before the IJ that his mother reported a beating he suffered to the police, who promised to "check the town." App. 176.

9

Finally, we will dismiss in part and deny in part Cuellar Manzano's constitutional claim. We will dismiss the claim as it pertains to the 2006 removal order because we lack jurisdiction. A petitioner must seek judicial review of a final order of removal within thirty days of its entry. 8 U.S.C. § 1252(b)(1). Notwithstanding the timeliness of a challenge to a *reinstated* order of removal, the thirty-day time limit applies to constitutional challenges to *original* orders of removal. *Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 203 (3d Cir. 2013). Thus, Cuellar Manzano's timely challenge to his reinstated order cannot salvage the untimeliness of his constitutional attack on his original order—the period for which passed many years ago. As a result, we lack jurisdiction to hear this aspect of his claim and will dismiss it.

We will deny Cuellar Manzano's claim as it concerns the 2017 proceedings (which we do possess jurisdiction to hear). He asserts the IJ lacked jurisdiction based on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) because the 2017 Notice of Referral to the Immigration Judge failed to specify the date and time of Cuellar Manzano's hearing. Pet'r Br. 27. We decline the invitation to assess the impact of *Pereira*, other than to note the Supreme Court's decision was a "narrow" one, addressing what information must be contained in a notice to appear in order to trigger the "stop-time" rule applicable when a petitioner seeks cancellation of removal pursuant to 8 U.S.C. § 1229b—an issue far afield from the due process violations alleged in Manzano's petition. *Pereira*, 138 S. Ct. at 2110. For this reason, we find *Pereira* to be distinguishable and Manzano's citation to it unavailing. Because Cuellar Manzano has failed to establish a cognizable constitutional violation, this aspect of his petition will be denied.

10

## III.

For the foregoing reasons, Cuellar Manzano's petition for review will be denied in part and dismissed in part. The Government's January 7, 2019, request to hold this matter in abeyance in light of the lapse in appropriations will be dismissed as moot.